## JOHN R. BROWN *vs.* JOHN RAMSAY.

1. A state of demand in form of an account charging the defendant with seven days' work done by plaintiff's son, J. W., harvesting and haying, giving the date, price per day, and sum total, sufficiently apprises the defendant of the demand against him, and is good.

2. A father may claim for services rendered by his son, a master by his apprentice or hired laborer, and may charge for it as done by himself.

3. Where a father sues for labor performed by his son, the plaintiff must prove that he is the principal in doing the work, and the son the agent, either in fact or in law, and either that the son, being emancipated, was working under him as his servant, or that he was not emancipated or was incapable of emancipation.

4. On a *certiorari* from the Court of Common Pleas this court will not

review the decision of the court below on questions of fact; but where the question is a mixed one of law and fact, the only inquiry here is whether there was a mistake or misapplication of the law by the court below.

5. If there is legal evidence before the court below upon which they can reach the conclusion to which they arrive, this court will not reverse the judgment, because the evidence would bring them to a different conclusion.

6. The right of the father to the services of his child ceases on the child's attaining the age of twenty-one years, and it is then the right of the child to receive its own wages; but arriving at the age of twenty-one is not *ipso facto* emancipation; the child may elect to remain with the parent or may be incapable of emancipation, and if it so remain, or such incapacity exists, the parent will be entitled to the child's wages.

7. Whether a child has been emancipated or not, or is incapable of emancipation by imbecility or otherwise, are questions of fact to be decided by the peculiar circumstances of each case.

8. A child may be emancipated by the act of the father and without the election of the child, as where the father turns the child from his house, and will not permit it to remain at home in his family.

9. The law will not presume any change in the relation of parent and child from the mere fact that the child has arrived at the age of twenty-one.

*Certiorari* to Hunterdon Pleas.

*G. A. Allen,* for the plaintiff.

*A. Wurts,* for defendant.

WHELPLEY, J.  This is a *certiorari* to the Hunterdon Pleas, and brings up the proceedings in an appeal from the court for the trial of small causes.  The first reason assigned for reversal is that the demand is not sufficient.  It certainly apprises the defendant fairly of the whole cause of action. It is in the form of a copy of account.

The first item is July 19th, 1853.

To seven days' work done by his son, Jacob Miller, harvesting and haying, at $1.25 per day, $8.75.

This is a good charge.  A father may charge services rendered by his son, a master by his apprentice or hired laborer, and charge for it as done by him.  *Qui facit per alium, facit per se.*

The state of demand claims for work done by plaintiff,

Brown v. Ramsay.

by his son. If he can recover at all he can recover on this demand. To sustain the demand he must prove that in the doing the work he was principal, and the son the agent, either in fact or in law; either that the son being emancipated, was working under him as his servant, or that he was not emancipated or incapable of emancipation.

The case upon the trial was that the son was deaf and dumb and over forty years of age; that he had lived with other persons besides his father; that he could work well, had no education, could not read or speak, made himself understood by signs; that he had no idea of the value of money, and could not take care of himself. It appeared, also, that when he worked for other people he had been paid for his labor in money or clothing; one of the witnesses swore that he was imbecile.

The plaintiff did not claim upon the trial that the defendant was liable because the contract for the labor was made by him with the defendant, but because the labor had been performed by Jacob Miller Ramsay, his son, who had never been emancipated by him, and was legally incapable of emancipation.

This is obviously a mixed question of law and fact, and we have no right to review the decision of the Common Pleas upon the facts; our only inquiry can be, did they mistake or misapply the law.

If there was evidence before them upon which they could legally find that the son had not been emancipated, or was of such feeble intellect as to be incapable of emancipation, we cannot reverse the judgment because the evidence would not have brought us to the same conclusion.

The court must have decided that the son was *non compos mentis,* incapable of taking care of himself or of making any valid contract, and as such is still *sub potestate patris,* like an infant.

The right of a father to the services of his sane child

ceases at twenty-one. It is then the right of the child to be emancipated, to be thenceforth its own master, make its own contracts, and receive into its own hands the fruit of its own labor.

But arriving at the age of twenty-one is not *ipso facto* emancipation. The child may elect still to remain the servant of its father, to abide under his roof, and receive sustenance and support from him. In such a case he is not emancipated, and the father is liable for his support and entitled to receive his earnings. *Overseers of Alexandria* v. *Overseers of Bethlehem*, 1 *Harr.* 122.

This, it is true, was a settlement case, but it seems to me that the principles upon which it was decided rule this case.

That case holds distinctly the doctrine that attaining the age of twenty-one is not emancipation; that whether it is so or not, is a question to be settled by the circumstances of the case; that it requires the election of the child to make it emancipation, and that an idiot, or person of such weak mind as to be incapable of making the election, is not emancipated, and cannot be, at attaining that age, so far as to prevent the acquisition of a derivative settlement. That case, I think, was rightly decided.

But I am by no means prepared to hold that an imbecile child over twenty-one years, not residing with his father and supported by him, cannot be emancipated by the act of the father turning him out of his family and from the shelter of his roof, and refusing to maintain him, so far as to enable him to sue for his own wages. In such a case the emancipation would be complete even without the assent of the child, for the common law *liability* of the father to support his child ceases when he attains his majority; he is no longer liable because of the infancy of the child. *Mills* v. *Wyman*, 3 *Pick.* 207, and cases there cited; *Cook* v. *Bradley*, 7 *Conn.* 57; 1 *Parsons on Con.* 259.

After that time it requires either the express or tacit assent of the father to the continuance of his·child in the relation of his unemancipated servant. That assent may be manifested by permitting the child to remain in his family as before, supported and sustained by him. The female children of many parents often remain in this way unemancipated long after attaining majority, rendering service to the father and supported by him, and for such services so rendered it has been held that no action lies. *Ridgway* v. *English*, 2 *Zab.* 416.

The law will not presume any change in the existing relation of parent and child from the mere fact that the child is twenty-one. Whether emancipation has taken place or not must be a question of fact, not of law.

In this case there was proof before the court that the child had always lived with and been supported by the father, although he had occasionally worked out and received his own wages; but the latter fact would not of itself prove emancipation.

Upon the evidence before them, the court might lawfully decide that the relation of a non-emancipated child still subsisted, and we must presume they did so decide.

The question whether when a non-emancipated child is permitted by his parents to work for others, and receive his own wages, payment to him will not be sufficient to bar the father's action, does not arise.

The defendant did not set up any such payment in his discharge. The defence was not payment to the son, but that the father had no right to the wages.

The judgment of the Common Pleas must be affirmed.

CITED *in Sutton* v. *Huffman*, 3 *Vr.* 63, 65; *Beach* v. *Mullen*, 5 *Vr.* 346