STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MAX SILVERMAN, PLAINTIFF IN ERROR.

Argued October 6, 1936—Decided November 6, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the defendant in error, *William A. Wachenfeld,* prosecutor, and *Joseph E. Conlon,* first assistant prosecutor.

For the plaintiff in error, *Braelow & Tepper.*

The opinion of the court was delivered by

CASE, J. Silverman was convicted of larceny on an indictment, found December 7th, 1934, charging him with the larceny of $4,000 held by M. & S. Agency, Incorporated, in trust for Samuel R. Zetner. The fifteenth assignment of error and the fifteenth reason for reversal are that the court erred in denying the motion for the plaintiff for a direction of verdict in his favor on the ground that there was no evidence of a larceny. The two-year period of limitations (Criminal Procedure act, section 152, 2 *Comp. Stat.* 1870) applies and consequently a larceny, to be cognizable under the indictment, must have been committed on or after December 7th, 1932.

M. & S. Agency, Incorporated, held certain moneys paid in by its several agents, of whom Zetner was one, and to be repaid to those agents if and to the extent that the corporation was not called upon to meet liability therefrom. The indictment charges a trusteeship on the part of the corporation, and we accept that terminology for the purposes of the discussion. Silverman was treasurer of the corporation and had authority, as treasurer, to sign the corporation checks. The larceny is said to have consisted of the withdrawal, by treasurer's check, of certain of those trust moneys and the application of the same to Silverman's personal uses. The bank account in which the trust moneys, including those held for Zetner, were placed was first kept at the West Orange Trust Company under the title "M. & S. Agency, Reserve" and later at the National Newark and Essex Banking Company as "M. & S. Agency, Inc., Reserve Account." The account in the West Orange Trust Company was closed on or about January 14th, 1932. Therefore, no prosecution may be had with respect to it. On December 6th, 1932, $812.44 was on deposit at the National Newark and Essex Banking Company, and from that time forward the balance was never greater than that sum. The account was closed February 2d, 1933.

The remittances which Zetner made to the corporation and which it is said were placed in the reserve fund, beginning with August 1st, 1932, an arbitrary date, and ending with October 20th, 1932, when the last remittance was made, were

five in number, all checks, varying from $35 to $103.50 in amount, and totaling $163.50. During the same period the deposits in the corporation reserve fund account were sixty in number, varying in amount up to $582.50, totaling approximately $4,700; and from that date forward to the closing of the account, as against no remittances whatever from Zetner, there were thirty-nine deposits, varying in amount up to $1,420, totaling upwards of $4,400. An extension of the comparative figures would only further emphasize the fact that the great bulk of money in the fund came from other persons than Zetner and that the account was not merely an accumulation of moneys held for him.

The date laid in the indictment as that on which the larceny occurred was January 11th, 1933. We find no proof of a criminal act committed either on that day or at any other time within the statutory period. One Hennessey, who had been in the employ of the corporation from February, 1931, until January, 1933, testified that during the period of about one year following the beginning of her employment some of the checks drawn upon the reserve fund were for salaries and that of these checks some, the witness could not say how many, were to the order of Silverman, each in the amount of $500, in payment of Silverman's salary, which was $500 per week. There is no evidence of withdrawals from the fund during the period covered by the indictment except as contained in the deposit sheets from the National Newark and Essex Banking Company. Those sheets show fourteen withdrawals during the time in question ranging in amount from $12 to $325 and do not indicate the purposes for which or the persons in whose favor the funds were withdrawn. There is no proof that those withdrawals were not for legitimate uses of the corporation, or indeed that they were not for uses to which the reserve fund might properly be put, and so far as we can ascertain there are no proofs from which such conclusions may be fairly inferred.

The state gives much force to what it calls the course of conduct by Silverman with respect to the bank account during the period preceding January, 1933, as testified by Miss Hennessey and to the fact that Silverman did not take the wit-

ness stand. Neither of these factors is sufficient, in our opinion, to relieve the state from the burden of proving a larceny within the limits of the indictment. The failure of Silverman to take the stand is not such proof, and neither is a course of conduct by him in having earlier drawn salary checks from the fund. The testimony contains evidence of statements by Silverman that he would repay Zetner the moneys due him. But that, standing alone, is not an admission that money had been stolen from the corporation, much less that if money had been stolen Silverman was the thief.

We think that the motion for direction of verdict in favor of the defendant charged in the indictment should have been granted and that the refusal was error. It is unnecessary to discuss any of the remaining assignments of error or reasons for reversal, many of which, according to the rules set down in the cases (*State* v. *Blaine,* 104 *N. J. L.* 325; 140 *Atl. Rep.* 566; *State* v. *Garzio,* 113 *N. J. L.* 349; 175 *Atl. Rep.* 98), are not so stated as to be properly before us.

The judgment below will be reversed, to the end that a *venire de novo* issue.