MARY FITZPATRICK, PLAINTIFF, v. GOERKE KIRCH COMPANY, DEFENDANT.

Argued May 5, 1937—Decided May 21, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiff, *Clarick & Clarick* (*Frank Cohn*, of counsel; *Samuel J. Marantz*, on the brief).

For the defendant, *Jaseph C. Paul* (*John F. Ryan*, of counsel).

The opinion of the court was delivered by

PARKER, J. The case was tried before Judge Jayne, at the Union Circuit, and there was a verdict of $8,000 for the plaintiff. The trial judge allowed and heard a rule to show cause based essentially on weight of evidence, and discharged the rule. Appeal was taken and was pending in the Court of Errors and Appeals, when further application was made to the trial judge for a new trial on the ground of newly discovered evidence, and was denied by him. The appeal was dismissed on defendant's motion and Mr. Justice Case, of this court, on application to him, allowed a rule to show cause for a new trial on the ground of newly discovered evidence, which rule is now before us for determination.

For the plaintiff, some question is raised touching alleged technical irregularities in the procedure outlined above, but we pass these without comment, preferring to dispose of the rule on the merits as they appear to us.

The newly discovered evidence consists solely of testimony to alleged statements of the principal witness for plaintiff as to the circumstances of the accident on which the suit is based, and which statements would, as claimed, so seriously impeach her testimony in the cause as to persuade a jury to a contrary verdict.

The accident occurred as plaintiff was walking on the sidewalk in front of defendant's store in Elizabeth. The claim was that there was a depression in the sidewalk, due to faulty construction or maintenance of a section containing small circular light vents intended to admit light through the sidewalk to a vault or cellar below; that this section had sunk slightly, leaving a "jog" in the sidewalk level, which had caused plaintiff to stumble and fall, breaking her hip. These circumstances were testified to by her daughter, Loretta, who said she was with plaintiff at the time, and this last circumstance is not denied. Photographs introduced at the trial show the defect; and the existence of that defect is not denied.

We come now to the newly discovered evidence, and are willing to assume for present purposes that due diligence would not have brought it to light in time for the trial. It is substantially this: that Mr. Caughman, an attorney of this court, was consulted by Loretta about her mother's case with a view of employing him to prosecute it, and in the course of the interview told him "she did not know what caused her mother to fall; that there was nothing on the sidewalk that she noticed that could have caused her to fall, and that neither her mother nor herself knew what caused the fall." (We quote the language of defendant's brief, which in this regard correctly gives the substance of Caughman's testimony).

This, it is claimed, is of such importance that if believed it would lead to a verdict for defendant; though it will be observed that it is not direct testimony about the accident, but only an impeachment of the testimony of Loretta by a

contradictory statement. But whatever value it would have if admitted or shown by plenary proof to have been the statement of Loretta, is seriously impaired if not entirely neutralized by the testimony of Loretta that she never was in Caughman's office, and never talked with him; by the testimony of Loretta's sister, Helen Kenely, that she was the one that visited Caughman and talked with him, and not having been present at the accident, naturally had no first hand knowledge of the details; and by the testimony of the witness Cunningham that he actually recommended Caughman to Mrs. Kenely and took her over to Caughman's office. Caughman swore that Loretta was the one who consulted him, and seems to have made a complaint of perjury against her, as a result of which she was tried in Special Sessions and acquitted. Caughman said he had made notes of the interview, but having refused the case, had later destroyed them. Photographs of the two sisters were produced to the court at the argument of this rule, and are not at all unlike.

The Caughman testimony, to be of any value to a jury, should at the very least show with reasonable clearness that it was Loretta who came to his office. We think he was entirely truthful in testifying, but we also are quite confident that he was mistaken in the identity of the party; and that there is no reason to suppose that his testimony, contradicted flatly by three witnesses, would persuade a jury of its correctness. In short, there is an entire failure to show that the "newly discovered evidence" would be of any persuasive value; and this suffices to move us to discharge the rule, and makes it unnecessary to deal with any other phases of the application.

The rule is discharged, with costs.